UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALEXANDER ASHKENAZI, *as Trustee of*
*The Halpert Alexander Trust*,

                      Plaintiff,

         - against -

LINCOLN NATIONAL LIFE INSURANCE
CO., *f/k/a Jefferson Pilot Life Insurance Co.*,

                    Defendant.
------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

08 CV 3235 (ENV)

On June 30, 2008, plaintiff Alexander Ashkenazi ("Ashkenazi") commenced this action,

seeking a declaration that two life insurance policies issued by defendant Lincoln National Life

Insurance Co. ("Lincoln National"), insuring the life of Mali Halpert ("Halpert"), remain in effect

despite Lincoln National's attempted cancellation of the policies for failure to pay the premiums.

Currently pending before the Court is plaintiff's application for a Protective Order, pursuant to

Federal Rule of Civil Procedure 26(c), on the grounds that defendant's discovery requests seek

material and information that is not relevant to any claim or defense in the action or to plaintiff's

credibility.

For the reasons set forth below, plaintiff's motion for a protective order is denied.

### FACTUAL BACKGROUND

In June 2005, Lincoln National[1] issued two policies of life insurance in the name of Mali

------

[1]The policies were issued by Jefferson Pilot Financial, the predecessor to Lincoln
National.

Halpert, the insured, with a total value of $4,000,000 in death benefits (the "policies"). (Pl. Ltr.[2] at 1; Def. Ltr.[3] at 7). According to defendant, at the time of application, Ms. Halpert was an 82-year-old retired woman from Hungary who represented that she was worth $9.6 million dollars with an income of $490,000 per year. (Def. Ltr. at 5, Exs. 3, 4). Defendant has submitted a copy of an application[4] which indicates that Halpert was healthy and had no existing life insurance, although she had one additional pending application for insurance. (Id.)

Ashkenazi is the trustee for the listed owner of the policies, the Halpert Alexander Trust (the "Trust"). Defendants claim that Ashkenazi procured these "stranger-originated" certificates of insurance ("STOLI"s) despite the fact that neither the Trust nor Ashkenazi has any known or stated insurable interest in the insured. (Def. Ltr. at 1).[5] According to Lincoln National, at the

---

[2]Citations to "Pl. Ltr." refer to the plaintiff's Amended Letter Regarding Discovery, submitted March 5, 2009, and the exhibits attached to plaintiff's original letter, submitted March 4, 2009.

[3]Citations to "Def. Ltr." refer to the Defendant's letter in opposition to plaintiff's letter application for protective order, submitted March 11, 2009.

[4]Although it is clear from the parties' submissions that Ashkenazi was issued two $2,000,000 insurance policies (Def. Ltr. Exs. 9, 10), it is not entirely clear which policy or policies the application paperwork submitted by Lincoln National corresponds to. It appears that a two-part application was required to obtain the life insurance policies. Lincoln National has provided three versions of the first part, one of which was submitted on its own (id. Ex. 3), and two of which were attached to the end of the respective insurance policies. (Id. Exs. 9, 10). Each of the applications sought coverage in the amount of $2,000,000. (Id. Exs. 3, 9, 10). The handwriting on each of the applications appears to be different (id.), although the signature pages on the two versions submitted with the policies appear to be identical. (Id. Exs. 9, 10). Those two signature pages are dated July 14, 2005. (Id.) The other signature page is dated July 2005; the day illegible. (Id. Ex. 3). Lincoln National submits only one version of the second part of the application (id. Ex. 4), which is dated February 3, 2005, and appears to have been completed by a medical examiner.

[5]Defendant also asserts that there has been no evidence or trust agreement produced by plaintiff to demonstrate that he was properly appointed as trustee or that identifies any

time the certificates were issued, Halpert lived in Brooklyn, but all the application paperwork was signed, executed, and delivered in New Jersey. (Def. Ltr. at 5). Similarly, defendant claims that the two certificates of life insurance issued by Lincoln National were delivered to Ashkenazi at his Irvington, New Jersey address on July 4, 2005. (Def. Ltr. at 7, Exs. 8, 9, 10). Lincoln National states that at the time of the issuance of the certificates, Lincoln National was not authorized to conduct insurance business in New York State. (Id.)

Defendant notes that according to Ashkenazi, the owner and beneficiary of the policies was the Trust, which had an address located at 1200 Clinton Avenue, Irvington, New Jersey. (Def. Ltr. Ex. 4). Defendant further claims that as trustee for the designated owner of the policies, Ashkenazi played a significant role in completing the application paperwork for the certificates in question, making numerous representations as to the insured's income, net worth and health. (Def. Ltr. at 6). Defendant claims that Ashkenazi "executed" Part II of the life insurance application, entitled "Answers to Medical Examiner," though it is unclear whether his signature appears on the document. (Id.; Ex. 4). Among other things, defendant notes that this particular form, which asserts that Halpert was in perfect health, contains a crossed-out signature that appears to have been replaced by Halpert's signature. (Id.; Ex. 4). Ashkenazi also completed an "Amendment to Application for Insurance" for both of the certificates in question, designating the owner and beneficiary of the certificates as "The Halpert Alexander Trust dated April 1, 2005, Alexander Ashkenazi, trustee." (Def. Ltr. at 6–7, Ex. 5). This paperwork was

---

beneficiary who does have an interest in the insured. (Def. Ltr. at 1). Indeed, defendant submits information and documentation suggesting that Ashkenazi has been sued in several other cases on claims that Ashkenazi obtained insurance death benefits from various insurers on the lives of elderly women with whom Ashkenazi had no apparent insurable interest. (Def. Ltr. at 2, 4 n.2, Exs. 1, 2).

signed on July 4, 2005 in Irvington, N.J. (Id.) In December 2006, Lincoln National claims it

received a request to change the address of the policy owner — Ashkenazi — from the Irvington,

New Jersey address to an address in New York. (Def. Ltr. at 7).

On June 27, 2007 and July 7, 2007, the two certificates of insurance lapsed for non-

payment of the premiums. (Def. Ltr. at 7; Exs. 11, 12). Although plaintiff does not dispute that

the premium payments were not made in a timely fashion (Pl. Ltr. at 1), plaintiff claims that the

lapse notice did not comply with New York Insurance Law § 3211 because Lincoln National

failed to send the notice to the insured. (Id. at 1-2).

Ashkenazi commenced this action on June 30, 2008 in the Supreme Court of the State of

New York, Kings County, seeking a declaration that the policies remain in effect. (Pl. Ltr. at

1–2; Def. Ltr. Ex 13). Defendant removed the case to federal court on August 7, 2008, denying

the allegations of the Complaint and asserting several affirmative defenses, including that

plaintiff's claims are barred by the doctrine of unjust enrichment and by the terms of the policies.

(Def. Ltr. at 8, Ex. 14). The parties dispute the location of the issuance and delivery of the

certificates and disagree as to whether New York or New Jersey law should apply. Ashkenazi

claims the certificates were issued and delivered in New York and that the only legal question

presented in this case is "whether the delivery of the policies to the retail agent in New York

qualifies as delivery in New York for the purpose of New York Ins. Law § 3211." (Pl. Ltr. at 2).[6]

On or about December 8, 2008, plaintiff received Lincoln National's discovery demands,

---

[6]The Court notes that although this choice-of-law question is discussed in plaintiff's
letter, the parties have not briefed the question and part of the defendant's requested discovery is
designed to obtain information relevant to the choice of law determination. Thus, the Court has
not addressed this issue.

seeking among other things information relating to the financial and medical representations made in the original application for insurance. (Pl. Ltr. at 2, Ex. 2). Following plaintiff's objections to the number and breadth of the demands (id. at 2, Ex. 1), Lincoln National served a revised set of demands on February 26, 2009, the majority of which continue to seek information relating to the circumstances surrounding the initial application process and plaintiff's relationship to the insured. (Id. at 2, Ex. 2). By letter dated March 4, 2009, plaintiff seeks a protective order precluding defendant from obtaining much of the information demanded, which plaintiff groups into three categories that he believes are outside the scope of the litigation: 1) the insured's actual health at the time of the application; 2) the insured's actual net worth; and 3) information relating to the "insurable interest" the plaintiff has in the policy. (Id. at 2, Ex. 3).

## DISCUSSION

A. Standard for Protective Order

Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense —
> including the existence, description, nature, custody, condition,
> and location of any documents or other tangible things and the
> identity and location of persons who know of any discoverable
> matter. . . . Relevant information need not be admissible at the
> trial if the discovery appears reasonably calculated to lead to
> the discovery of admissible evidence.

Fed R. Civ. P. 26(b)(1). This rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also Zanowic

v. Reno, No. 97 CV 5292, 2000 U.S. Dist. LEXIS 13845, at *5 (S.D.N.Y. Sept. 25, 2000);

Degulis v. LCR Biotechnology, Inc., 176 F.R.D. 123, 125 (S.D.N.Y. 1997). Thus, discovery

may be allowed for subjects not directly related to the main focus of a litigated claim, so long as

the court determines that the requests could reasonably lead to the discovery of information that

may ultimately be relevant.

Under Rule 26(c), however, the Court may issue a protective order upon a showing of

good cause. Specifically, the Rule provides in relevant part that "[t]he court may, for good cause,

issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense." Fed. R. Civ. P. 26(c). The burden is on the party seeking the protective

order to demonstrate good cause. Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)

(noting that where the requested discovery is "'relevant, the burden is upon the party seeking

non-disclosure or a protective order to show good cause'" (citation omitted)). In general, good

cause exists "'when a party shows that disclosure will result in a clearly defined, specific and

serious injury.'" Pitsiladi v. Guerrero, No. 07 CV 6605, 2008 WL 5454234, at *2 (S.D.N.Y.

Dec. 30, 2008) (quoting In Re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222

(S.D.N.Y. 2006)).[7] Conclusory assertions of harm are insufficient. Id.; Rofail v. United States,

227 F.R.D. 53, 54 (E.D.N.Y. 2005). Courts have found good cause to exist in a wide range of

contexts. See, e.g., Chembio Diagnostic Sys. v. Saliva Diagnostic Sys., 236 F.R.D. 129

(E.D.N.Y. 2006) (noting that where information is a trade secret under Rule 26(c)(7), a

disclosure may be blocked upon a showing that the harm caused by disclosure would outweigh

---

[7]But see Topo v. Dhir, 210 F.R.D. 76, 77-78 (S.D.N.Y. 2002) (rejecting specificity requirement); see also Condit v. Dunne, 225 F.R.D. 113, 116 (S.D.N.Y. 2004) (discussing disagreement as to proper standard).

the need for the information by the party seeking it); Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (granting protective order as to plaintiff's immigration status where such status was merely a collateral issue in the case); Sheehan v. Metro. Life Ins. Co., No. 01 CV 9182, 2002 U.S. Dist. LEXIS 11789, at *16-17 (S.D.N.Y. June 28, 2002) (precluding as overly burdensome a request for documents regarding every transaction between employer and insurer in a suit by an employee against the insurer).

The determination of whether a protective order should issue is "highly fact-contingent," and "'Rule 26(c) confers broad discretion on the trial court.'" Condit v. Dunne, 225 F.R.D. at 116 (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)). The court must balance the moving party's burden of production against that of the nonmoving party in full discovery. See Rofail v. United States, 227 F.R.D. at 55; Hasbrouck v. BankAmerica Hous. Servs., 187 F.R.D. 453, 455 (N.D.N.Y. 1999).


B. Plaintiff's Arguments

In seeking the instant protective order, plaintiff argues that the defendant's requests seek discovery of matters unrelated to the current case. Plaintiff contends that the issues presented by this case are limited to the question of whether the notices of lapse complied with New York Insurance Law. Plaintiff contends that the information sought by defendant does not relate to any claim or affirmative defense raised in the pleadings, and that to the extent that defendant is attempting to raise claims of invalidity or fraudulent misrepresentation in applying for the policies, plaintiff argues that such defenses are barred by the incontestability clauses required under New York and New Jersey law because the policies were activated more than two years

before they allegedly lapsed.  See Security Mut. Life Ins. Co. of New York v. Herpaul, 36 A.D.3d 449, 450, 827 N.Y.S.2d 141, 142 (1st Dep't 2007) (applying New York and New Jersey incontestability provisions).  Although there may be a question as to whether New York or New Jersey law governs this case, plaintiff contends that because the policies in question were active for over two years, they are incontestable both under New York Insurance Law § 3203(a)(3) (providing "that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue") and under New Jersey Statute § 17B:25-4 (providing that "[t]here shall be a provision that the policy . . . shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue").

## C. Defendant's Arguments

Defendant argues that its discovery demands are justified because the information is relevant to its defense of unjust enrichment.  It bases its argument on three theories: 1) that there was no insurable interest at the time of application for the policies; 2) that the policies violate public policy; and 3) that the policies violate the New Jersey Insurance Fraud Prevention Act. All three theories are discussed below.

### 1. Insurable Interest

First, Lincoln National argues that the law of both New York and New Jersey provides that a policy issued in the absence of an underlying insurable interest[8] is to be voided, regardless

---

[8]New York law defines the term "insurable interest" as

(A) in the case of persons closely related by blood or by law, a

8

of the incontestability provisions. (Def. Ltr. at 11–12). Specifically, both New Jersey law and

New York law require that there must be an insurable interest at the time an individual procures a

life insurance policy. N.J. Stat. Ann. § 17B:24-1.1(b); N.Y. Ins. Law § 3205(b)(2).

Defendant points out that New Jersey law explicitly states that "[a]n insurer shall be

entitled to rely upon all statements . . . made by an applicant for insurance relating to the

insurable interest of the applicant in the insured and no insurer shall incur legal liability . . . by

virtue of any untrue statements . . . so relied upon in good faith by the insurer." N.J. Stat. Ann.

§ 17B:24-1.1(d); see also Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1236-37 (11th Cir.

1995) (applying New Jersey law to rescind life insurance policy on grounds of fraud after

expiration of contestability period); Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 635, 651

A.2d 92, 95 (1995) (noting that generally, "[e]ven after the expiration of the contestability period,

an insurer may deny a claim if the insured committed fraud in the policy application"); Tulipano

---

> substantial interest engendered by love and affection; (B) in the
> case of other persons, a lawful and substantial economic interest in
> the continued life, health or bodily safety of the person insured, as
> distinguished from an interest which would arise only by, or would
> be enhanced in value by, the death, disablement or injury of the
> insured.

N.Y. Ins. Law § 3205(a)(1). New Jersey law defines the term as follows:

> An individual has an insurable interest in the life, health and bodily
> safety of another individual if he has an expectation of pecuniary
> advantage through the continued life, health and bodily safety of
> that individual and consequent loss by reason of his death or
> disability. . . . An individual has an insurable interest in the life,
> health and bodily safety of another individual to whom he is
> closely related by blood or by law and in whom he has a substantial
> interest engendered by love and affection.

N.J. Stat. Ann. § 17B:24-1.1(a)(2)-(3).

v. U.S. Life Ins. Co., 57 N.J. Super. 269, 277, 154 A.2d 645, 650 (App. Div. 1959) (noting that "an insurance policy violative of public policy or good morals cannot be enforced simply because the incontestability period has run"). Thus, defendant argues that under New Jersey law, where the insurer can show that there was no insurable interest at the time of application, the policy may be voided, despite the incontestability provision.

Defendant also argues that New York courts have held that if the facts surrounding the creation and issuance of an insurance policy fail to demonstrate that a proper contract was entered into, then the incontestability clause will not preclude an action for recission by the insurer. (Def. Ltr. at 12–14) (citing American Mayflower Life Ins. Co. of New York v. Moskowitz, 17 A.D.3d 289, 794 N.Y.S.2d 32 (1st Dep't 2005) (holding that if there is a forged signature to transfer ownership of a life insurance policy to a stranger, "the incontestability clause could not apply, since the provisions for incontestability inure to the benefit of the insured and his beneficiary, or to the benefit of a bona fide assignee, but not a stranger" (citing 46 C.J.S., Ins. § 859))). Defendant claims, therefore, that under the law of either state, the policies should be voided if the proper insurable interest was lacking, even if the contestability period has expired.

## 2. Public Policy

Defendant also contends that the policies should be voided as unenforceable contracts if it can be shown that Ashkenazi's conduct was violative of public policy, apart from the statutory insurable interest requirements. (Def. Ltr. at 16). Lincoln National alleges that Ashkenazi is "an investor who routinely violates insurable interest laws and misrepresents the health and/or income of the insured to procure" STOLI policies. (Id.) According to defendant, a typical

STOLI policy is created when "an individual, typically an elderly one, procures life insurance on his own life in order to subsequently assign the policy to a third party following the lapse of the two-year contestability period." Lincoln National Life Ins. Co. v. Calhoun, 596 F. Supp. 2d 882, 884 (D.N.J. 2009). Such policies violate public policy, defendant argues, because they "enable the insured to obtain ready cash by selling his policy to a stranger whose only interest in the insured is his early demise." Life Prod. Clearing LLC v. Angel, 530 F. Supp. 2d 646, 648 (S.D.N.Y. 2008). Defendant claims its discovery requests may produce evidence demonstrating that the policies at issue in this case are in fact STOLI policies, obtained in violation of public policy, and thus are unenforceable.

Lincoln National notes that Ashkenazi has been a party in similar suits involving other alleged STOLI policies, see, e.g., Ashkenazi v. AXA Equitable Life Ins. Co., No. 07 CV 115034 (N.Y. Sup. Ct. compl. filed Nov. 9, 2007) (contained in Def. Ltr. Ex. 2), including one that involves the same named insured as in this case. See Berskhire Settlements, Inc. v. Ashkenazi, No. 09 CV 6 (E.D.N.Y. compl. filed Jan. 5, 2009) (contained in Def. Ltr. Ex. 1). Defendant states that this pattern of misrepresentation could support a ruling voiding the policies because they would fall under the STOLI category, and thus their enforcement would violate public policy. (Def. Ltr. at 16). Lincoln National contends that its discovery requests are necessary to fully understand Ashkenazi's actions and determine if the policies are STOLI policies that may be voided.

### 3. New Jersey Insurance Fraud Prevention Act

Finally, defendant points to the New Jersey Insurance Fraud Prevention Act, N.J. Stat.

Ann §§ 17:33A-1 *et seq.* A person violates this statute if he "[p]repares or makes any written or oral statement, intended to be presented to any insurance company . . . for the purpose of obtaining . . . an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract." Id. § 17:33A-4. Defendant contends that its discovery demands are necessary to explore whether Ashkenazi made misrepresentations that would give rise to a counterclaim under the Act. (Def. Ltr. at 19–22).

D. Analysis

The discovery rules are interpreted broadly so as to ensure that "civil trials are not conducted in the dark." Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 274 (S.D.N.Y. 1999) (citing Schlagenhauf v. Holder, 379 U.S. 104, 114–15 (1964)); see Fed. R. Civ. P. 26(b)(1). Defendant has pleaded the defense of unjust enrichment in its Answer, and the discovery sought may be relevant to that defense. (Def. Ltr. at 8, Ex. 14). Moreover, while not specifically pleaded in the Answer, defendant has raised a number of additional theories that may provide defenses to plaintiff's incontestability argument, including the absence of an insurable interest and a violation of public policy, evidence of which may be found through the requested discovery. Not only has defendant made an initial showing that Ashkenazi may have a practice of creating STOLI policies for his own personal gain, but Lincoln National's argument in support of this discovery is further strengthened by the existence of the New Jersey Insurance Fraud Prevention Act, if New Jersey law applies. The relevant statutes and caselaw suggest that these defenses may be viable.

12

Finally, other than the challenge to relevancy, plaintiff has failed to show good cause

through specific facts as to why the Protective Order should be granted. Plaintiff contends that

the discovery requests are overly burdensome because defendant is asking for information

relating to the health and net worth of Halpert, who is not a party to this case. (Pl. Ltr. at 6).

Considering that plaintiff already has supplied some of Halpert's records to defendant, the Court

does not believe that it will be unduly burdensome to supply the insured's records to the extent

that they are in the possession, custody, and control of either Ashkenazi or the Trust. To the

extent the requests intrude on Halpert's privacy (a concern plaintiff has not explicitly raised), that

concern can be addressed through a narrow protective order ensuring the confidentiality of the

information produced.


## CONCLUSION

Accordingly, the Court finds that defendant's requested discovery is relevant or may lead

to the discovery of admissible evidence relevant to the issues in this case, and given the broad

nature of discovery and the potential defenses raised by Lincoln National, plaintiff's motion for

an Order of Protection is denied.


**SO ORDERED.**

Dated: Brooklyn, New York
      May 13, 2009

Cheryl L. Pollak
United States Magistrate Judge